FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D N.Y

★ AUG 24 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x
UNITED STATES OF AMERICA,

          Plaintiff,

-against-

FRANK LO CASCIO,

          Defendant.
----------------------------------------------x

MEMORANDUM AND ORDER
90 CR 1051 (ILG)

GLASSER, United States District Judge:

    Pending before the Court is a motion by the defendant seeking an Order that would compel (1) access to public records and the unsealing of all sealed audio recordings dated November 30, 1989 and December 12, 1989 in the above captioned case, said records currently in the possession of the United States Attorney's Office for the Eastern District of New York and/or the Federal Bureau of Investigation currently under a sealing order of this Court dated January 9, 1998; (2) unsealing of any and all transcripts of the jury selection and trial of the above captioned matter that may currently be under seal; and (3) ordering the United States Attorney's Office to authorize Carroll Audio to release unenhanced copies of the tapes of this case to the defendant, his counsel and experts and shall permit the defendant's expert to examine the original tapes that may be in their possession.

    The Court is compelled, yet again, by this motion to revisit the "Gotti case" twenty one years after LoCascio, his co-defendant, was convicted and sentenced, to again find that portion of the 8,000 page transcript that responds to it. A kaleidoscopic review of the seemingly endless litigation pursued by LoCascio will serve to put this motion in proper perspective.

LoCascio, together with John Gotti, were convicted after a 6 week jury trial that began in February 1992, of substantive and conspiracy RICO violations of 18 U.S.C. § 1962(c) and (d), and a number of predicate acts charged as separate counts. He was sentenced to life imprisonment. The charges stemmed from his involvement as the "underboss" of the Gambino Crime Family. He and Gotti appealed their judgments of conviction entered on June 23, 1992, and from the denial of their motions for a new trial and from the subsequent denial of their renewed motions for a new trial. The primary evidence at trial consisted of tape recordings of conversations in the Ravenite Social Club and the testimony of Salvatore Gravano, who was a cooperating witness. Gotti was represented on appeal by Charles Ogletree, Professor of Law at Harvard Law School and Ephraim Margolin of San Francisco, California. LoCascio was represented by Michael Tigar of Texas, Dennis Riordan of San Francisco and Michael Kennedy of New York. The issues raised on appeal were thoroughly considered by the Court in a 34 page opinion and their convictions and sentences were affirmed in October 1993, United States v. LoCascio, 6 F.3d 924 (2d Cir. 1993). Familiarity with that opinion is assumed.

This Court began an opinion, reported in 171 F.R.D. 19 (E.D.N.Y. 1997), by noting that it was the fourth motion filed on behalf of LoCascio pursuant to Rule 33 Fed. R. Cr. P. The primary basis for it was new evidence which allegedly established that Gravano committed perjury when he testified against him at trial and therefore was not effectively cross-examined. In an opinion of 39 pages, the Court meticulously examined each contention of perjury ascribed to Gravano and denied his motion.

In 2003, approximately ten years after his conviction, eleven pretrial motions, see 171 F.R.D. 19, n.1 at 22, four motions pursuant to Rule 33 Fed. R. Cr. P., an affirmance

on appeal in 6 F.3d 924 and denial of cert. 511 U.S. 1070, LoCascio moved the Court pursuant to 28 U.S.C. § 2255 to vacate his judgment of conviction. This was his fifth attempt to obtain relief. The Court began its 18 page opinion as follows: "It would, I believe, contribute to an appreciation of what follows, to keep in mind that after a trial, the transcript of which exceeds 8,000 pages, at which testimony of upwards of thirty witnesses was presented, and received in evidence were audio cassettes of electronically intercepted conversations, transcripts of which filled seven loose leaf binders which aided the jury while listening to them, extensive video recordings, photographs and documents, LoCascio was convicted . . . ." 267 F. Supp.2d 306, 307-08 (E.D.N.Y. 2003). The basis of that motion was again, that the government elicited testimony against him from Gravano which the government knew was false and that he was deprived of effective assistance of counsel. Familiarity with that Court's opinion is assumed.

LoCascio appealed the denial of his petition arguing only that he was denied effective assistance of counsel. That claim was based on an affidavit from Anthony Cardinale, one of LoCascio's trial counsel, stating that he received death threats from Gotti because he individualized the interests of LoCascio at Gotti's expense and thus thereafter conformed his representation of LoCascio to Gotti's wishes. As was indicated above, I denied his § 2255 petition on the ground that it was meritless and in addition, procedurally barred. 267 F. Supp.2d 306, *supra*. The Court of Appeals remanded the case to this Court for an evidentiary hearing. 395 F.3d 5 (2d Cir. 2005). On remand, which required the Court to review an 8,000 page record once again, and arrive at the same conclusion previously reached, that his claim was specious, a conclusion buttressed by extensive references to the record. 462 F. Supp.2d 333 (E.D.N.Y. 2005).

Three days before the evidentiary hearing on remand was to begin, LoCascio filed a motion to recuse or disqualify me, which I denied. LoCascio appealed that denial and the denial after remand of his § 2255 motion. The Court of Appeals addressed and affirmed the denial of both in 473 F.3d 493 (2d Cir. 2007).

The procedural history of this case, reflected in more than nineteen written opinions,[1] more specifically, the affirmance by the Court of Appeals of the denial of LoCascio's § 2255 petition and the denial of certiorari by the Supreme Court in 2007 precludes any further post conviction proceedings for relief. Every conceivable motion for such relief has been exhausted. That indisputable fact notwithstanding, the affirmation in support of this motion by LoCascio's attorney avers in its second paragraph that "This affirmation is submitted in support of the motion of defendant Frank LoCascio for post-conviction relief . . . ." No citation of authority pursuant to which that relief can still be sought is provided.

Of particular interest are assertions in his attorney's letter to the Court dated October 29, 2010 that: "The defendant has never had access to the sealed transcripts nor the opportunity to have them reviewed even for purposes of his appeal or habeas corpus petition. . . . Moreover, the defendant has never had access to the original tape recordings sought. . . . He was only given access to <u>enhanced</u> tapes . . . ." Docket No. 409. Those assertions are remarkable, not only because they are false, but because she avers in paragraph 5 of her affirmation, that those assertions, based upon information and belief are based upon in depth conversations with the defendant, his former defense

---

[1] See 372 F. Supp.2d 304, 306 n.2 (E.D.N.Y. 2005).

attorneys, and others previously involved in the case along with extensively exhaustive research." The defense attorneys and the "others" are not named.

In the course of his extensive litigation in this case, LoCascio was represented by no less than ten different lawyers, each of whom was a competent and some even notable criminal defense lawyers. Her affirmation plainly and incredulously suggests that his lawyers represented LoCascio at trial, on appeal and in his various post-conviction motions without having seen all relevant transcripts or heard original and unenhanced tape recordings.

The trial record belies those assertions and her extensive and exhaustive research. The undisputed testimony of Special Agent George Gabriel of the FBI on direct and on cross-examination was that: Copies of the Ravenite tapes were made for the defense team, Tr. at 1688; there was no alteration of originals, Tr. at 1712; no tapes were enhanced, Tr. at 1910; entire conversations on tape were given to the defendants months before the trial and transcripts of tape recordings represented precisely what was heard on tape, Tr. at 1926; the intercepted conversations were recorded in duplicate original, Tr. at 1678; words were never heard that were not put in the transcript, Tr. at 1932-33; forty six original video cassettes of surveillance in front of the Ravenite Club were received in evidence, Tr. 1644-45; tapes were unsealed to make copies for the defense team after which the originals were re-sealed and stored in a safe at 26 Federal Plaza, Tr. at 1688.

The clear implication in the letter referred to of LoCascio's counsel and in her affirmation that there were transcripts during the trial never seen by defense counsel is that portions of the trial were conducted in their absence or in what could only be

5

described as a star chamber proceeding. Neither was the case. Other than transcripts of occasional sidebar conferences at which all counsel were present, or in Chambers conferences at which all counsel were present, there are no sealed trial transcripts. As to transcripts of the sidebar and Chambers conferences, I had occasion to address those and other sealing issues in In re the Application of Daily News and New York Post v. United States v. John Gotti, 787 F. Supp. 39, 326 (E.D.N.Y. 1992). I have also had occasion to address the issue of revealing juror's names and transcripts of juror voire dire in United States v. John Gotti, 784 F. Supp. 1013 (E.D.N.Y. 1992) and 787 F. Supp. 319, 321-23, *supra*.

What is driving this motion is a thinly disguised effort to re-litigate a ruling made during the trial upon which LoCascio and his counsel can only be described as fixated. That ruling has remained undisturbed in the more than nineteen years since it was made and should be regarded by now as final.

I turn now to that ruling. At trial, I was informed that LoCascio anticipated calling a person named Norman Dotti, an acoustical engineer, who would give his expert opinion as to what should be heard on tape. LoCascio wanted to elicit from that witness that what is to be heard is "We ain't whacking this fucking kid." The government's view of what is heard on the tape is "We whacked this fucking kid." Tr. at 6955. I ruled that I would probably not allow the witness to give an expert opinion as to what is to be heard on the tape. My reasons were tentatively stated when I was advised as to what was contemplated as follows:

> . . . it is my understanding from every authority that I've ever read with respect to tapes that if the government's version of what is heard on a cassette, as reflected on a transcript,

6

> differs from what the defendant's version is to what is being heard on a cassette, then the defendant's responsibility is to prepare its own transcript of what the defendants believe the cassette says, play the tape a second time for the benefit of the jury, with the defendant's version of the transcript, and let the jury make a determination as to whether it's the government's transcript or the defendants' transcript which is correct.

Tr. at 6862.

I then went on to say:

> I've given you some indication as to what I believe my determination will be, but you are more than free to assist me in such a way as you think might be useful. Write a memorandum or a letter.

Tr. at 6865.

The following day I confirmed the ruling I indicated I believed I would make and stated:

> The issue in this case is whether the jury is or is not hearing what the government suggests a cassette says, [the jury] having been advised that it's not the transcript, it's the cassette which is the evidence and the transcript is simply an aid or whether the version which the defendant has submitted is what is being heard on the cassette. There isn't anything an expert would contribute to that determination, in my view, which is essentially the function of the jury, other than to completely confuse and obfuscate a very, very simple question.

Tr. at 6960.

I reiterated that explanation for my ruling, citing specific authority for it as follows:

> I would like to make it very plain that I am sensitive to the rights of both parties in this courtroom and I'm not making this determination shooting from the hip.

7

> I made the determination that I did after reading United
> States vs. Williams, United States vs. Maivia, in the district
> court in Hawaii, United States vs. Smith, written by Judge
> Kanne in the Seventh Circuit, United States vs. Gerena,
> United States vs. DeLuna and half a dozen other cases.
>
> I am satisfied in my own mind that this is not a proper
> subject for the kind of testimony that you wish to elicit.
>
> The procedure for determining whether a transcript is or is
> not accurate has been set out years ago in this circuit by
> United States vs. Bryant, United States vs. Carson and I don't
> know how many other cases that I could cite. The cases are
> clear. I indicated it to you yesterday.
>
> The procedure is if you disagree with a version of a transcript
> and there is no stipulation as to accuracy, prepare your own
> version, play the tape, let the jury listen to both and let the
> jury decide what it is that is being heard.
>
> ... It's the function of the jury to determine whether what is
> being heard on that cassette is or is not reflected in the
> transcript. That's not a matter for expert testimony, in my
> view, or which in any way facilitates the responsibility of a
> jury with respect to that matter.

Tr. at 6968-69.

The affirmation of LoCascio's counsel in support of his motion and the exhibits annexed to it convey an unmistakable effort to re-litigate that ruling.

Twenty years after his conviction, five post-conviction motions, three affirmances by the Court of Appeals, two Supreme Court denials of certiorari, relief in each unsuccessfully sought for a variety of reasons other than innocence. See Friendly, Is Innocence Irrelevant, Collateral Attack on Criminal Judgments, 38 U. CH. L. Rev. 42 (1970), finality must be declared.

I have, in another opinion in this case, quoted Justice Harlan's statement in Mackey v. United States, 401 U.S. 667, 690-91 (1971). It is even more fitting that it be

recalled now:

> It is, I believe, a matter of fundamental import that there be a visible end of the litigable aspect of the criminal process. Finality in the criminal law is an end which must always be kept in plain view . . . . Surely it is an unpleasant task to strip a man of his freedom and subject him to institutional restraints. But this does not mean that in doing so we should always be halting or tentative. No one, not criminal defendants, not the judicial system, not society as a whole is benefitted by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved (internal citations omitted).

See also United States v. Parness, 536 F.2d 474, 475 (2d Cir. 1976) ("There comes a time in every federal criminal prosecution when a defendant who has been accorded due process at the three levels of the federal judicial system and whose claims of error have been weighed and found wanting, should be required to serve the sentence which has been imposed upon him according to law. Otherwise he makes a mockery of federal criminal justice.")

For all the foregoing reasons, his motion is denied.

SO ORDERED.

Dated:  Brooklyn, New York
        August 24, 2011

S/ILG

I. Leo Glasser